IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES INGRAM,                                CASE NO. 2:06-cv-279

    Plaintiff,                                   JUDGE GRAHAM

v.                                             MAGISTRATE JUDGE ABEL

TERRY COLLINS, et al.,

    Defendants.

**ORDER and**
**REPORT AND RECOMMENDATION**

Plaintiff James Ingram, a prisoner at the Chillicothe Correctional Institution ("CCI") brings the instant action under 42 U.S.C. §1983. He alleges that he was denied due process by defendants Terry Collins, Tim Brunsman, Brian Wittrup, Ms. Thomas, Gail Tinsley, and Ms. Engle due to his placement in disciplinary segregation for fifteen days "without satisfaction of State-mandated substantive predicates established in State guidelines;" due to his placement thereafter in local control without being properly informed of his rights and "without satisfaction of State-mandated substantive predicates established in State guidelines;" due to a biased hearing board; and because State officials "interfered with and infringed upon" his right to appeal his placement in local control by failing to follow State administrative guidelines. *Complaint*. This matter is before the Court on the initial complaint, Defendant's Motion to Dismiss (Doc. No. 13), Plaintiff's Response (Doc. No. 15), Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 16), and Defendant's Reply (Doc. No. 17).

Petitioner's unopposed motion to name Deputy Director Terry Collins as a defendant in replacement of Reginald Wilkinson, who has now retired, Doc. No. 10, is **GRANTED.**

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Defendant's Motion

to Dismiss the Complaint be **GRANTED**; Plaintiff's Motion for Judgment on the Pleadings be **DENIED**, and that this action be **DISMISSED**.

## I.  FACTS

Ingram states that on March 7, 2006, he was interrogated by prison officials regarding alleged rules violations. On March 8, 2006, hearing officer Thomas advised Ingram of the specific rules violations with which he was charged. Thomas told Ingram his punishment would not exceed ten days in isolation. Ingram thereafter pleaded guilty to the rules violations and was sanctioned with fifteen days in disciplinary segregation. Thereafter, on March 17, 2006, petitioner was notified that Warden Brunsman would be modifying petitioner's punishment due to the nature of the rules violations. On March 22, 2006, Ingram returned to general population. The next day, on March 23, 2006, petitioner was taken before the Local Control committee for a hearing. After a hearing in front of the Local Control Committee, he was placed in local control. Ingram complains he was never provided with written reasons for the increased sanction, and that his appeal rights were not explained. Ingram filed timely objections to his placement in local control, which objections were denied. Ingram advised Leta Pritchard that he wanted to file an appeal; she said she would file the appeal for him. On April 4, 2006, Ingram received a written copy of the denial of his objections.

In this action pursuant to 42 U.S.C. §1983, Ingram asserts that he was denied due process because prison officials placed him in disciplinary segregation without following State administrative guidelines that required that he be asked for his version of the events and advised of his rights, specifically, his right to present witnesses. Petitioner also asserts that he was denied due process when, on March 23, 2006, prison officials placed him in local control without following State administrative guidelines that again required that he be advised of his rights and given the

opportunity to explain his version of the events. Ingram also asserts that he was denied due process because Wittrup participated in the March 7, 2006, initial investigation of rules infractions charges against Ingram and also supervised the subsequent increased penalty hearing of the Local Control Committee. He asserts that he was entitled to written notice notifying him of the reason for his placement in Local Control   Ingram states that he would have been eligible to receive good time credits after June 21, 2006, and that continued placement in local control isolation after such date may deprive him of good time credits and thereby affect the duration of his sentence.

Ingram seeks termination from local control placement and restoration to privileged status; he requests an injunction against retaliation until his release from prison; he request the Court notify the warden that his sentence expires on June 21, 2006; finally, he requests that a "special master" be appointed to review all prison local control placements dating back to July 19, 2004, and all decisions of the Rules Infractions Board to determine compliance with State administrative guidelines.

### III.

Defendants have filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12b(6). Defendants contend that this action should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. Doc. No. 13. Dismissal is appropriate under Federal Rule of Civil Procedure 12b(6)

> " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied,* 520 U.S. 1251 (1997). The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy*

3

> *ex rel. Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir.2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). In making such a determination, a court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' " *Sistrunk,* 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994)). A court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.,* 324 F.3d 845, 848 (6th Cir.2003).

*Miller v. Miller,* 2006 WL 1735355 (S.D. Ohio June 22, 2006). Even liberally construing all of petitioner's allegations as true, the Magistrate Judge agrees that Plaintiff has failed to state a viable claim for relief.

The parties agree that the due process rights implicated by petitioner's placement in disciplinary segregation pursuant to his guilty plea to rules violations before the Rules Infractions Board, and his subsequent placement in local control is governed by *Wolff v. McDonnell, supra*, 418 U.S. at 556. The Supreme Court held therein that "the full panoply of rights" do not apply in prison disciplinary proceedings. *Id.* (citation omitted). However, the Supreme Court stated in *Wolff v. McDonnell, supra*, that where the State provides a statutory right to good time credits that decreased a prisoner's sentence and that could be forfeited only for serious misbehavior, due process requires: 1. "advance written notice of the claimed violation and a written statement of the... evidence relied upon and... reasons for the disciplinary action taken"; 2. at least 24 hours between the notice and hearing to allow the inmate to prepare for his appearance; and 3. "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.*, at 563-566. Prisoners are not entitled to the assistance of counsel in prison disciplinary proceedings, but

> [w]here an illiterate inmate is involved... or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Id.*, at 570.

However, Plaintiff does not allege that he was deprived of any good time credits as a result of his convictions on rules violations and his subsequent 15 day placement in disciplinary segregation, or as a result of his placement in local control. Thus, the due process requirements of *Wolff v. McDonnell, supra*, do not apply.

> In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224-25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986).

*Miller v. Campbell*, 108 F.Supp.2d 960, 963 (W.D. Tenn. 2000). Neither Ingram's 15 day placement in disciplinary segregation, nor his subsequent placement in local control constitutes an "atypical, or significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner,* 515 U.S. 472, 486 (1995).

> The punishment of incarcerated prisoners.... does not impose retribution in lieu of a valid conviction, nor does it maintain physical control over free citizens forced by law to subject themselves to state control over the educational mission. It effectuates prison management and prisoner rehabilitative goals. *See State v. Alvey,* 67 Haw. 49, 55, 678 P.2d 5, 9 (1984). Admittedly, prisoners do not shed

5

> all constitutional rights at the prison gate, *Wolff,* 418 U.S., at 555, 94 S.Ct., at 2974, but " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Jones,* 433 U.S., at 125, 97 S.Ct., at 2537, quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.

*Id*., at 485; *see also Booth v. Corrigan*, 2006 WL 571631 (E.D. Michigan March 8, 2006):

> [A]n inmate generally cannot maintain a due process claim based on her confinement in segregation, particularly where, as here, she apparently suffered no loss of good-time credit. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 576-77 (6th Cir.2005) (designation as member of a security threat group and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); *Sarmiento v. Hemingway,* 93 Fed. Appx. 65, 66 (6th Cir. Mar.15, 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case."); *Utley v. Campbell,* 84 Fed. Appx. 627, 629 (6th Cir. Dec.15, 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); *Williams v. Wilkinson,* 51 Fed. Appx. 553, 556-57 (6th Cir. Nov.15, 2002); *see also Jones v. Baker,* 155 F.3d 810 (6th Cir.1998) (administrative segregation); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997); *Bruggeman v. Paxton,* No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001). Nothing in the complaint provides any basis for a conclusion that the conditions the plaintiff encountered in segregation or, subsequently, in close custody "impose[ ] atypical and significant hardship ⋯ in relation to the ordinary incidents of prison life." *Conner,* 515 U.S. at 484; *see also id.* at 487.

*Id.* Ingram's allegation that he may loose good time credits in the future simply fails to rise to the level of a protected liberty interest. *See Graves v. Hodge*, 2006 WL 485115 n.5 (W.D. Tenn.

6

February 28, 2006)("an inmate generally cannot maintain a due process claim based on her confinement in segregation, particularly where... she apparently suffered no loss of good-time credit" and allegation that plaintiff lost opportunity to earn future sentence credits did not constitute protected liberty interest).

Further, even assuming that the procedural due process requirements of *Wolff v. McDonnell, supra*, are applicable here, the record reflects that the requirements of *Wolff v. McDonnell* were met. Hearing offficer Thomas advised Ingram of the rules violations charged. *Complaint,* at 3. Ingram does not deny receiving a copy of a Conduct Report (although petitioner states that there is no proof that he received the report prior to March 7, 2006), *see Plaintiff's Response to Defendant's Motion to Dismiss,* which indicates that Ingram was charged on March 7, 2006, at 12:30 p.m. with violating Rules 51 and 46, when

> C.O. Crowley opened legal mail in the inside mail room that belonged to inmate Ingram 413-193. Inside the legal mail was a catalog that had knives, stun guns, pepper spray, and various other defense devices in it. The inmate admitted to running a mail order business for profit with his wife. He admitted to running 2 businesses while being incarcerated. She attached inmate statement.

*Exhibit A to Defendant's Motion to Dismiss.* Thus, the record reflects that prison staff sufficiently notified Ingram of the nature of the charges against him. On March 8, 2006, he signed a waiver of rights form indicating that he waived his right to 24 hours between the time he had received a copy of the conduct report and his hearing before the Rules Infraction Board. He also waived his right to call witnesses, and acknowledged that he had been advised that conviction could result in the loss of good time credits. *Exhibit D to Defendant's Motion to Dismiss*; *see also Record of Proceedings of the Rules Infraction Board, Exhibit B to Defendant's Motion to Dismiss*. He pleaded guilty. He

7

signed the *Disposition of the Rules Infraction Board*, which indicates that he was given an opportunity to be heard and that the board believed parts of his testimony, but found him guilty of the rules violations charged. Thus, Ingram was given an opportunity to present a defense, even if he was told to "hurry up," *Complaint*, at 5, when giving his statement to the Rules Infraction Board. According to the complaint, after a hearing on March 8, 2006, at 12:55 p.m., Plaintiff was sanctioned to 15 days in disciplinary segregation. The document indicates that Plaintiff was advised that he could appeal "using the provided form DRC4027 within fifteen days. *Exhibit C to Defendant's Motion to Dismiss.*

Much of Plaintiff's complaint arises from the warden's March 23, 2006, decision to modify his penalty by continued placement in local control due to the nature of the rules infractions. *See Local Control Placement Review Hearing Exhibit B to Defendant's Reply to Plaintiff's Response.* As discussed, Ingram argues that, because he was briefly returned to general population on March 22, 2006, prior to being placed in local control the next day, he had a protected liberty interest in remaining in general population, which liberty interest was denied without the due process requirements of *Wolff v. McDonnell, supra. Complaint,* at 4-5.

Ingram refers to *Kim v. Hurston*, 182 F.3d 113, 119 (2nd Cir. 1999), in support of this argument. Ingram also contends that he is entitled to judgment on the pleadings because Defendants failed to respond to any of his allegations regarding continued placement in local control on March 23, 2006. *Motion for Judgment on the Pleadings*. Plaintiff's arguments are unavailing.

The sanction of fifteen days disciplinary segregation and placement in local control once that fifteen days expired was a result of Ingram's March 8, 2006, guilty plea to rules violations. Contrary to Plaintiff's allegation here, prison officials' decision to continue his placement in local control as

a result of the nature of the rules infractions did not constitute a violation of due process under *Wolff v. McDonnell, supra*. Plaintiff's reference to *Kim v. Hurston, supra*, does not alter this conclusion. *Kim v. Hurston* involved the violation of a prisoner's protected liberty interest in continuing participation in work release. Such are not the circumstances here. Further, Plaintiff's allegation of bias based upon Deputy Warden of Operations Brian Wittrup's participation in the investigation of the rules violations,[1] as well as his role as a supervisor on the Local Control Committee fails to the level of any constitutional deprivation under *Wolff v. McDonnell, supra*.

> [N]either *Wolff* nor any other Supreme Court case has "precisely outlined the definition of an 'impartial decisionmaker'" for purposes of a prison disciplinary hearing. *See Hoskins v. McBride,* 202 F.Supp.2d 839, 846-47 (N.D.Ind.2002). "The degree of impartiality of prison officials does not rise to the level of judges generally. It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo,* 100 F.3d 253, 259 (2nd Cir.1996); *See also Madera v. Goord,* 103 F.Supp.2d 536, 540 (N.D.N.Y.2000). The standard of impartiality enunciated in *Wolff* requires that a prison disciplinary hearing officer "not be so insufficiently impartial as to present a 'hazard of arbitrary decisionmaking'". *Black v. Selsky,* 15 F.Supp.2d 311, 317 (W.D.N.Y.1998). Therefore, an impartial decisionmaker, for purposes of a prison disciplinary hearing, "is one who, *inter alia,* does not prejudge the evidence and who cannot say ····how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2nd Cir.1990).
>
> To prove bias in an administrative adjudication, a party "must overcome a presumption of honesty and integrity in those serving as administrators." *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). The burden of overcoming the presumption of impartiality can only be accomplished with "convincing evidence that a risk of actual bias or prejudgment is present." *Navistar Int'l Transp. Corp. v. E.P.A.,* 941 F.2d 1339, 1360 (6th Cir.1991). Any alleged bias or prejudice on the part of a decisionmaker "must be evident from the record and cannot be based

---

[1] Plaintiff states that Wittrup called him a liar. *Complaint,* at 13.

> on speculation or inference." *Id.* Bare assertions of bias and prejudgment will not support a prisoner's claim that he was denied an impartial prison disciplinary hearing. *See Allen,* 100 F.3d at 260.

*Snell v. Jackson*, 2006 WL 212025 (E.D. Michigan, January 25, 2006); *see also Mejia v. Stine*, 2005 WL 2589184 (E.D. Kentucky, October 13, 2005)("[T]here is no constitutional infraction, if there is no showing of actual bias"), citing *Komyatti v. Wright,* 78 F.3d 586, unpublished, 1996 WL 89246 (7th Cir. March 1, 1996). Plaintiff has failed to meet this standard here.

As a final matter, the Magistrate Judge notes that Ingram states that he has not exhausted administrative remedies, which may constitute an additional grounds for dismissal.

> A prisoner must exhaust all available administrative remedies before filing federal lawsuits challenging prison conditions, regardless of the type of relief sought. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Wyatt v. Leonard,* 193 F.3d 876, 877 (6th Cir.1999); *Wright v. Morris,* 111 F.3d 414, 417 (6th Cir.1997). The prisoner must allege and demonstrate that he has exhausted all available administrative remedies and should attach the decision containing the administrative disposition of his grievance to the complaint, or in the absence of written documentation, describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir.2000); *Wyatt,* 193 F.3d at 878; *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998). When a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate. *See* 42 U.S.C. § 1997e(a); *White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997).

*Shabazz v. Rochell*, 73 Fed.Appx. 806, 2003 WL 21956996 (6th Cir. August 13, 2003).

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Defendant's Motion to Dismiss, Doc. No. 13, be **GRANTED;** that Plaintiff's Motion for Judgment on the Pleadings, Doc. No. 16, be **DENIED**; and that this action be **DISMISSED**.

Petitioner's unopposed motion to name Deputy Director Terry Collins as a defendant in replacement of Reginald Wilkinson, who has now retired, Doc. No. 10, is **GRANTED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                             s/Mark R. Abel
                                             United States Magistrate Judge